**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E.C., individually and on behalf of himself and all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| GOODRX HOLDINGS, INC.; CRITEO CORP.; META PLATFORMS, INC.; and GOOGLE LLC; | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff E.C. (the "Plaintiff"), on behalf of himself and all others similarly situated, alleges the following Class Action Complaint (the "Action") against the above-captioned Defendants GoodRx Holdings, Inc. ("GoodRx"), Criteo Corporation ("Criteo"), Meta Platforms, Inc. ("Facebook") and Google LLC ("Google") (the "Defendants") upon personal knowledge as to himself and his own actions, and upon information and belief, including the investigation of counsel, as follows:

## I.    NATURE OF THE ACTION

> "*At GoodRx, protecting our users' privacy is one of our most important priorities. We are thoughtful and disciplined about what information we gather and how and why we use it.*"

> -    Defendant GoodRx's Response to $1.5 million Federal Trade Commission fine for user privacy violations, February 1, 2023

1.       Defendant GoodRx is a publicly-traded prescription-coupon and telehealth company.  With respect to its prescription-coupon line of business, GoodRx is a 'disruptor' that claims to be "build[ing] better ways for people to find the right care at the best price," by providing prospective prescription medication buyers with a survey of prices at local pharmacies along with prescription coupons to use at those respective pharmacies to make their medications more affordable.  With respect to its telehealth services, branded as "HeyDoctor," GoodRx provides online consultations with telehealth professionals who can prescribe various medications and recommend various treatments for sicknesses, ailments, and other medical issues.

2.       In order to use GoodRx's telehealth services, users provide some combination of highly sensitive personally identifiable information to GoodRx ("PII") as well as protected health-

related information ("PHI") (collectively, the "Private Information"), including but not limited to their first and last name, email address, phone number, biological demographic information, health information, and current address.  Additionally, in order to use GoodRx's prescription-coupon services, users provide geographic and location data as well as the name of the prescription medication that they are seeking.  Users of both lines of GoodRx's business use the internet in order to access GoodRx's services.  Hence, information provided to GoodRx in order to provide services includes unique digital identifiers such as internet protocol address ("IP Address").

3.      Unfortunately for the nearly 20 million users that use GoodRx on a monthly basis, GoodRx has been surreptitiously packaging and selling this highly sensitive Private Information of consumers.  The conduct at issue in this Action is a tactful and concerted action between three massive advertising platforms, Facebook, Google, and Criteo (collectively, the "Advertising Defendants") and GoodRx, to abuse GoodRx users' privacy without consent by weaponizing their Private Information for profit.

4.      Plaintiff E.C. provided his Private Information, inclusive of health data, to GoodRx with the reasonable expectation that this Private Information would remain confidential and private.  Regrettably, this was not the case.

5.      Plaintiff E.C., on behalf of himself and the putative Class, brings this Action against Defendants for damages, inclusive of actual damages and statutory damages, as well as for a disgorgement of profits by the Defendants, injunctive relief, pre- and post-judgment interest, reasonable attorneys' fees, and all other relief this Court deems just and proper.

## II.     JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive

of interest and costs, there are more than 100 putative members of the Classes defined below, and

a significant portion of putative Class members are citizens of a state different from one or more

of the Defendants.

7.      This Court has personal jurisdiction over Criteo because its principal place of

business is located in New York.  Google, Meta, and Criteo are also subject to specific personal

jurisdiction in this State because a substantial part of the events and conduct giving rise to

Plaintiff's claims occurred in this State, including Defendants' collection and interception of

Plaintiff's Private Information from GoodRx and the use of that data for commercial purposes.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c), and (d) because

a substantial portion of the conduct described in this Class Action Complaint was carried out in

this District.  Furthermore, Defendant Criteo is headquartered in this District and subject to

personal jurisdiction in this District.

III.    **PARTIES**

*Plaintiff E.C.*

9.      Plaintiff E.C. is a resident of the State of New York.

10.     Plaintiff E.C. used the GoodRx platform beginning in 2017 in order to find coupons

and prescribing pharmacies for various prescriptions of a highly sensitive nature.  At the same time

that E.C. used the GoodRx platform (and through the present day), E.C. maintained social media

accounts with Defendant Facebook as well as numerous accounts with Defendant Google,

including a Gmail account.

11.     In order to obtain prescription coupons and information regarding

pricing/availability of medications at local pharmacies, Plaintiff E.C. was required by GoodRx to

provide information related to the prescription(s) for which he sought the aforementioned prescription medication(s).

12.     Plaintiff E.C. had zero knowledge that his information was being packaged and sold by GoodRx to the Advertising Defendants, inclusive of his Private Information and his IP address.

### *Defendant GoodRx Holdings, Inc.*

13.     Defendant GoodRx Holdings, Inc. is a Delaware corporation with its principal place of business located in California.

14.     Defendant GoodRx was founded in 2011.  Initially, GoodRx was solely a prescription-coupon company, but has since expanded its lines of business to include the aforementioned telehealth services through its "HeyDoctor" brand as well as informative materials regarding various health ailments and their corresponding medications.

### *The Advertising Defendants*

### *Defendant Criteo Corporation*

15.     Defendant Criteo Corporation is a Delaware corporation with its principal place of business located in New York.

16.     Defendant Criteo Corporation is a digital advertising company that offers data collection and advertising technology to other companies in connection with the placing of online advertisements.

17.     Upon information and belief, nearly all of Criteo's revenue is earned through its advertising business.

### *Defendant Meta Platforms Inc.*

18.     Defendant Meta Platforms Inc. is a Delaware corporation with its principal place of business located in California.

19.     Defendant Meta Platforms Inc. owns and/or controls numerous social media platforms, including Facebook, Instagram, and others.  Because of the extensive reach of Meta's social media presence, Meta is able to serve advertisements to social media users on Meta's social media platforms.  Meta founded it's advertising business in 2007 and currently generates over 98% of its revenue through advertising (including nearly $115 billion in advertising revenue in 2021).

### *Defendant Google LLC*

20.     Defendant Google LLC is a Delaware corporation with its principal place of business located in Mountain View, California.

21.     Defendant Google LLC, at its core, is an advertising company.  Using Google's powerful suite of businesses (as well as the data collected by those businesses), including Google search, Google email (commonly known as 'gmail'), and other products, Google is able to serve advertisements to users.

## IV.     FACTUAL ALLEGATIONS

### *Defendant GoodRx's Collection of Private Information and Privacy Representations*

22.     As noted, in order to use GoodRx's telehealth services, users provide some combination of Private Information, including but not limited to their first and last name, email address, phone number, biological demographic information, health information, and current address.  Additionally, in order to use GoodRx's prescription-coupon services, users provide geographic and location data as well as the name of the prescription medication that they are seeking.  Users of both lines of GoodRx's business use the internet in order to access GoodRx's services.  Thus, other information provided to GoodRx in order to provide services includes unique digital identifiers such as IP address.

23.     On numerous occasions during the proposed Class Period, GoodRx made representations regarding the sanctity and importance of protecting consumer Private Information, including but not limited to:

    a.  Defendant GoodRx stated in its Privacy Policy that, between October 2017 and March 2019, that "[w]e never provide advertisers or any other third parties any information that reveals a personal health condition or health information."

    b.  Defendant GoodRx, between October 2017 and March 2019, stated that, in "limited cases" "personal medical data" would be shared with third parties.

    c.  Defendant GoodRx, between October 2017 and October 2019, reassured consumers that "third parties are bound to comply with federal standards as to how to treat 'medical data'"

    d.  On December 14, 2019, Defendant GoodRx's co-CEO Doug Hirsch stated on Twitter: "We don't sell information and we never have.  People can use GoodRx without giving us any information.  Any information we do receive is stored under the same guidelines as any health entity… I think it's important to mention that we started GoodRx to help Americans, not gather data or exploit anyone."

24.     Given these representations and the types of services GoodRx provides, users like Plaintiff and Class members expected their data, including health information, and other interactions on GoodRx, to remain confidential.

***The Advertising Defendants' Capabilities to Surreptitiously Collect Private Information***

25.     The Advertising Defendants each have the ability – and did use these capabilities – to collect consumer data from GoodRx's various lines of business without consumer knowledge:

26.   **Criteo.**   Criteo offers data collection and advertising technology to other companies, including third-party websites like GoodRx.  Criteo does this through the "Criteo One Tag" which is a line of code inserted onto a third-party website that allows Criteo to intercept all the data points that a potential third-party advertiser might want in order to serve ads to consumers, like Plaintiff E.C. and members of the putative Class.

27.   GoodRx uses the Criteo One Tag on the GoodRx platform as a means to intercept user's information and data and to package this information and sell it to various third parties who serve ads to consumers over the internet.

28.   **Facebook.**  In 2015, Facebook launched Facebook Pixel, "a new way to report and optimize for conversions, build audiences, and get rich insights about how people use your [respective] website."  According to Facebook, an advertiser need only "place a single pixel across [its] entire website to report and optimize for conversions" so that the advertisers could, in turn, "measure the effectiveness of [its] advertising by understanding the action[s] people take on [its] website."

29.   Facebook Pixel, now known as Meta Pixel, is essentially a piece of code which is inserted onto a third-party website, like GoodRx, which tracks user activity on that respective website.  This technology enables Defendant Meta to intercept all of the data associated with a user's visit to a third-party website, including the data that they enter into that respective website inclusive of the user's IP address – which acts as a means to identify that respective user across the internet.

30.   GoodRx uses the Meta Pixel on the GoodRx platform as a means to intercept user's information and data and package this information and sell it to advertisers who use Facebook and Meta's other social media properties as a conduit to serve advertisements.

31.   **Google.**   Google similarly has a pixel product akin to Meta's Meta Pixel product. Google offers several analytics products, including SDKs and a tracking pixel, which exist solely to help drive ad revenue.   For instance, Google's SDK and pixel integrate with Google's advertising offerings, such as Google Ads, Search Ads 360, Google Cloud, and Google Ad Manager, to direct more individuals to use Google's ad network and products, thus increasing Google's overall ad revenue.   Products like Google's SDK and its tracking pixel also improve the company's advertising network and capabilities by providing more fulsome profiles and data points regarding individual users.

32.   GoodRx uses Google's pixel and SDK on the GoodRx platform as a means to intercept user's information and data and to package this information and sell it to advertisers who use Google's various digital properties as a way to serve advertisements.

### *The Advertising Defendants Unlawfully Used Data Collected by GoodRx*

33.   The data GoodRx disclosed and the Advertising Defendants intercepted is extremely valuable.  According to Experian, health data is a "gold mine" for healthcare companies and clinicians.

34.   Consumers' health data, including what prescriptions they have, are extremely profitable.  For instance, Datarade.ai advertises access to U.S. customers names, addresses, email addresses, telephone numbers who bought brand name medicine.  The starting price for access to just some of this data was $10,000.  Other companies, like Pfizer, spend $12 million annually to purchase health data.

35.   Defendant GoodRx monetized and used the data collected from GoodRx users to serve personalized advertisements.   For example, GoodRx used (and paid) Meta to serve advertisements based on users' prescription medication.

36.     Specifically, using Meta's "Ads Manager" and "Custom Audiences" feature, GoodRx identified users with Facebook and Instagram accounts, and uploaded data directly to Meta, including users' email addresses, phone numbers, and mobile identifiers (*e.g.*, device IDs and advertising IDs) to identify users.

37.     GoodRx then categorized users based on their health information (*e.g.*, users who had used a certain prescription) that GoodRx had disclosed and allowed Meta to intercept and used this information to create Custom Audiences.  It named these Custom Audiences based on the medication these users had been prescribed (*e.g.*, "atorvastatin claims" to mark atorvastatin prescription users).  GoodRx then used these Custom Audiences to serve personalized ads, including those related to their medical treatment and prescription information.

38.     GoodRx ran these targeted advertising campaigns on Instagram and Facebook between 2017 and 2020.

### *Harm to Consumers*

39.     Plaintiff E.C. provided his Private Information to GoodRx in order to obtain information regarding prescriptions that he needed.  This information was disclosed to and intercepted by the Advertising Defendants in order to sell this valuable and sensitive data to third parties in order to serve advertisements to E.C.

40.     Plaintiff E.C. did not consent to the interception or disclosure of his data to the Advertising Defendants, or to anyone else.

## V.     CLASS ALLEGATIONS

41.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

**Nationwide Class:** All natural persons in the United States who used GoodRx and whose communications and/or data were shared with third parties, including the Advertising Defendants, during the applicable statutory period.

42.     Plaintiff reserves the right to amend the Class Period as this litigation progresses based on information that may later come to light either through the discovery process or otherwise.

43.     Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) the Defendants, Defendants' subsidiaries, affiliates, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest, and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendants' counsel.

44.     **Numerosity:**   The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable.  The Class likely consists of millions of individuals, and the members can be identified through GoodRx's records, as well as the records of the Advertising Defendants.

45.     **Predominant Common Questions:** The Class' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members.  Common questions for the Class include, but are not limited to, the following:

   a.  Whether Defendants violated Plaintiff's and Class members' state consumer protection statutes;

   b.  Whether Defendants were unjustly enriched;

   c.  Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution, and disgorgement; and

     d.   Whether Plaintiff and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

46.    **Typicality:**  Plaintiff's claims are typical of the claims of the other members of the Class.  The claims of Plaintiff and the members of the Class arise from the same conduct by Defendants and are based on the same legal theories.

47.    **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including litigations to remedy privacy violations.  Plaintiff has no interest that is antagonistic to the interests of the Class, and Defendants have no defenses unique to Plaintiff.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.  Neither Plaintiff nor his counsel have any interest adverse to the interests of the other members of the Class.

48.    **Substantial Benefits:**  This class action is appropriate for class treatment (and ultimately certification) because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

**VI.**    **CAUSES OF ACTION**

<u>**COUNT I**</u>

**STATE CONSUMER PROTECTION STATUTES**

**(NEW YORK GENERAL BUSINESS LAW 349)**

**Against All Defendants**

49.    Plaintiff re-alleges and incorporates by reference all of the preceding allegations of this Complaint with the same force and effect as if fully stated herein.

50.    Defendants are considered 'businesses' under New York General Business Law 349 ("GBL 349").

51.    Defendants' business acts and practices are unfair and deceptive under GBL 349. New York (as well as other states through their respective unfair and deceptive trade practices statutes) has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data.  Defendants violated GBL 349 by, among other things, disclosing and intercepting Plaintiff's and Class members' sensitive data, including Private Information, without consent.

52.    GoodRx further engaged in unfair business practices because it made material misrepresentations and omissions concerning the information that it assured users it would not share with third parties, which deceived and misled users of the GoodRx platform.

53.    Defendants' business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  The gravity of the harm of Defendants secretly disclosing, intercepting, and misusing Plaintiff's and Class members' sensitive and highly valuable personal data is significant, and there is no corresponding benefit resulting from such conduct.  Finally, because Plaintiff and Class members were completely unaware of Defendants' conduct, they could not have possibly avoided the harm.

54.    By unlawfully disclosing and intercepting this data, Defendants have taken money or property from Plaintiff and Class members.  Plaintiff and the Class Members seek all available

damages under applicable state consumer protection laws, including statutory damages under GBL 349.

## COUNT II

### UNJUST ENRICHMENT

### Against All Defendants

55.     Plaintiff re-alleges and incorporates by reference all of the preceding allegations of this Complaint with the same force and effect as if fully stated herein.

56.     Defendants received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

57.     Defendants received benefits from Plaintiff and Class members in the form of the Plaintiff's highly valuable data, including Private Information, that Defendants wrongfully disclosed and intercepted from Plaintiff and Class members without authorization and proper compensation.

58.     Defendants disclosed, intercepted, stored, and used this data for their own gain, providing Defendants with economic, tangible, intangible, and other benefits, including highly valuable data for analytics, advertising, and improvement of their platforms, algorithms, and advertising services.

59.     Had Plaintiff known of Defendants' misconduct, he would not have provided any of his data to Defendants or have used or paid to use the GoodRx Platform.

60.     Defendants unjustly retained these benefits at the expense of Plaintiff and Class members because Defendants' conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and Class members.  The benefits that

GoodRx derived from Plaintiff and Class members rightly belong to Plaintiff and Class members. Defendants' conduct is inequitable under unjust enrichment principles in every state.

61.     Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendants received.

## VII.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the proposed Class respectfully requests that the Court enter an order:

A.   Certifying the Class and appointing Plaintiff as the Class' representative;

B.   Finding that Defendants' conduct was unlawful, as alleged herein;

C.   Awarding declaratory relief against Defendants;

D.   Awarding such injunctive and other equitable relief as the Court deems just and proper;

E.   Awarding Plaintiff and the Class members statutory and actual damages;

F.   Directing that Defendants disgorge to Plaintiff and the Class members all profits unlawfully obtained;

G.   Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

H.   Awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and expenses; and

I.   Granting such other relief as the Court deems just and proper.

## VIII.   JURY TRIAL DEMAND

62.     Plaintiff hereby demands a trial by Jury.

**DATED**: February 3, 2023                    Respectfully submitted,

*/s/ Blake Hunter Yagman*
Israel David
*israel.david@davidllc.com*
Blake Hunter Yagman
*blake.yagman@davidllc.com*
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Tel.:          (212) 739-0622
Facsimile:   (212) 739-0628